UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA M. MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>EVAN LARSON, Patrol Officer, Sioux Falls Police Department; IAN BRANCH, Detective, Sioux Falls Police Department; JON THUM, Chief of Police, Sioux Falls Police Department; LUKE LAWTON, Deputy State's Attorney, Minnehaha County State's Attorney's Office; DAN HAGAR,[1] State's Attorney, Minnehaha County State's Attorney's Office; NICOLE PHILLIPS, Deputy State's Attorney, Minnehaha County State's Attorney's Office; ANDREW ROBERTSON, Magistrate Judge, Minnehaha County Courthouse; ROBIN HOUWMAN, Presiding Judge, Second Judicial Circuit; JONATHAN LEDDIGE, Magistrate Judge, Minnehaha County Courthouse; JASON KOISTINEN, Public Defender, Minnehaha County Public Defender's Office; TRACI SMITH, Chief Public Defender, Minnehaha County Public Defender's Office, MARK MILBRANDT,[2] County Sheriff, Minnehaha County Jail; JOHN DOES 1–5, Jail Staff (Feb. 19, 2025), Minnehaha County Jail,<br><br>Defendants. | 4:25-CV-04088-ECS<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |

---

[1] The Court notes that the correct spelling of this defendant's name is Dan Haggar. See State's Attorney, Minnehaha County, South Dakota, https://www.minnehahacounty.gov/dept/sa/sa.php (last visited Apr. 30, 2026); see also Moore v. Haggar, 4:25-CV-04193-ECS, Doc. 1 at 1.

[2] Mark Milbrandt is a previous sheriff of Brown County, South Dakota. As this Court understands his complaint, Moore intended to refer to the Minnehaha County Sheriff, Mike Milstead. See Sheriff's Office, Minnehaha County Sheriff's Office, https://www.minnehahacounty.gov/dept/so/so.php (last visited Apr. 28, 2026).

| | |
|---|---|
| JOSHUA M. MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, in his official capacity as Attorney General of South Dakota; ERNEST THOMPSON, in his official capacity as Deputy Attorney General of South Dakota,<br><br>Defendants. | 4:25-CV-04191-ECS |
| JOSHUA M. MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>MINNEHAHA COUNTY, SOUTH DAKOTA; JUDGE ROBIN HOUWMAN; KARL THOENNES; MINNEHAHA COUNTY COMMISSIONERS,<br><br>Defendants. | 4:25-CV-04192-ECS |
| JOSHUA M. MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>DAN HAGGAR, in his official capacity as Minnehaha County State's Attorney; MINNEHAHA COUNTY, SOUTH DAKOTA,<br><br>Defendants. | 4:25-CV-04193-ECS |

2

| | |
|---|---|
| JOSHUA M. MOORE,<br><br>    Plaintiff,<br><br> vs.<br><br>TRACI SMITH, in her official capacity as Chief Public Defender of Minnehaha County; MINNEHAHA COUNTY, SOUTH DAKOTA,<br><br>    Defendants. | 4:25-CV-04194-ECS |

Currently pending before this Court are Plaintiff Johsua M. Moore's five[3] pro se complaints. Moore v. Larson, 4:25-CV-04088-ECS, Doc. 1; Moore v. Jackley, 4:25-CV-04191-ECS, Doc. 1; Moore v. Minnehaha County, 4:25-CV-04192-ECS, Doc. 1; Moore v. Haggar, 4:25-CV-04193-ECS, Doc. 1; and Moore v. Smith, 4:25-CV-04194-ECS, Doc. 1. This Court will refer to each of these cases by the last four digits of their civil case filing number, followed by the corresponding docket number.

## I. Motions for Leave to Proceed In Forma Pauperis

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Moore's

---

[3] Moore has another case pending before this Court, Moore v. Gering, 4:25-CV-04150-ECS (D.S.D. Aug. 6, 2025), that this Court will screen in a separate order.

financial affidavits, this Court finds that he has insufficient funds to pay the filing fee. Thus, Moore's motions for leave to proceed in forma pauperis, CV-4088, Doc. 2; CV-4191, Doc. 2; CV-4192, Doc. 2; CV-4193, Doc. 2; 25-4194, Doc. 2, are granted.

## II.    Motions to Take Judicial Notice

Moore filed motions requesting that this Court take judicial notice of the order of dismissal, as well as "[s]upporting filings exhibits, and factual record . . . documenting denial of counsel, conflicts of interest, and deprivation of a self-defense hearing[]" in Moore v. Houwman, 25-4026-KES (D.S.D. Feb. 24, 2025). CV-4192, Doc. 7 at 2; CV-4193, Doc. 8 at 2; CV-4194, Doc. 8 at 2. Moore also requests that the Court take judicial notice of the "[f]actual findings, holdings, and reasoning in Campbell v. Whitcher, 5:24-CV-05039-KES[.]" CV-4192, Doc. 7 at 2; CV-4193, Doc. 8 at 2; CV-4194, Doc. 8 at 2. Moore alleges that "[t]hese records are matters of public record and directly relevant to [his] claims in all three actions: Haggar (4:25-CV-04193-ECS), Minnehaha County (4:25-CV 04192-ECS), and Smith (4:25-CV-04194-ECS)." CV-4192, Doc. 7 at 2; CV-4193, Doc. 8 at 2; CV-4194, Doc. 8 at 2.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). But under Rule 201, a court may take judicial notice of "an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "Adjudicative facts are 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201 advisory committee's notes on proposed rule). A

4

court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The Eighth Circuit has held that Rule 201(b) allows courts "to take judicial notice of public documents for the purpose of noting undisputed adjudicative facts, but judicial notice is inappropriate to the extent [one party] offers these documents for the 'truth of the matters within them and inferences to be drawn from them—matters which [the opposing party] disputes.'" Insulate SB, Inc. v. Advanced Finishing Sys. Inc., 797 F.3d 538, 543 n.4 (8th Cir. 2015) (quoting Kushner v. Beverly Enters., 317 F.3d 820, 832 (8th Cir. 2003)). In Insulate SB, Inc., the Eighth Circuit determined that it was appropriate to take judicial notice of "the existence of and basic facts surrounding" other cases and documents that had been filed in public court records but declined "to consider the documents as evidence" that the party engaged in any wrongful conduct alleged therein. Id.

To the extent that Moore requests that this Court take judicial notice of the basic facts and existence of Moore v. Houwman, 25-CV-4026-KES (D.S.D. Feb. 24, 2025), and Campbell v. Whitcher, 24-CV-5039-KES (D.S.D. June 6, 2024), his motions for judicial notice, CV-4192, Doc. 7; CV-4193, Doc. 8; CV-4194, Doc. 8, are granted for this limited purpose.

III.    1915 Screening

A.    Factual Background as Alleged by Moore

Each of Moore's five complaints involve the same set of operative facts and stem from an incident involving Shawn Goetsch. "On October 30, 2024, an alleged incident occurred involving Shawn Goetsch[,]" CV-4088, Doc. 1 at 5, that ultimately led to Moore being charged with simple assault, CV-4194, Doc. 1 at 3. Evan Larson, a patrol officer for the Sioux Falls Police Department (SFPD), "responded to Goetsch but never contacted [Moore] or conducted

5

any investigation that would have discredited Goetsch's claim." CV-4088, Doc. 1, at 1, 5. On February 12, 2025, Ian Branch, a detective for the SFPD, and Luke Lawton, a deputy state's attorney for the Minnehaha County State's Attorney's Office, "obtained a warrant[4] for [Moore's] arrest without probable cause." Id. at 1–2, 5. Moore alleges that he was never questioned by Branch or Lawton, and that "[a]ny official reviewing Goetsch's history would know he was not a credible complainant." Id. at 5. According to Moore, "Goetsch has over 30 felony convictions and a documented history of stalking [Moore] and others. He had been out of prison for only 13 days." Id. Moore asserts that Magistrate Judge Andrew Robertson "approved the warrant [for Moore's arrest] without conducting a proper probable cause analysis." Id.

On February 18, 2025,[5] Moore paid the warrant fee, "voluntarily surrendered on simple assault charges[,] and immediately requested appointed counsel." Id.; CV-4192, Doc. 1 at 2, 6. Moore states that he "suffers from bipolar disorder, severe anxiety, and neurological conditions that substantially impair his ability to self-represent." CV-4192, Doc. 1 at 6. In one of his complaints, Moore alleges that "[d]espite repeated formal requests in writing, email, and verbally, [Moore] was forced to proceed pro se at his initial appearance, triggering a panic attack in the courthouse lobby." Id. at 2. But in his other complaints, Moore alleges that he was appointed a public defender, Jason Koistinen, shortly before his hearing. CV-4088, Doc. 1 at 6; see also CV-4194, Doc. 1 at 3 ("On February 18, 2025, [Moore] was charged with simple assault and, being indigent, was appointed counsel from the Minnehaha County Public Defender's Office.").

_____

[4] Moore states that he found the warrant in his mailbox on February 15, 2025, which "indicat[ed] that law enforcement knew his address but made no effort to contact him prior to seeking arrest." CV-4088, Doc. 1 at 5.

[5] In CV-4088, Moore states that he turned himself in on February 19, 2025. CV-4088, Doc. 1 at 5.

6

Moore alleges that his appointed public defender, Koistinen, "was conflicted due to prior representation of the alleged victim [Goetsch] in over 30 matters." CV-4192, Doc. 1 at 2; see also CV-4194, Doc. 1 at 1 (stating that the Minnehaha County Public Defender's Office "had a severe and obvious conflict of interest, having previously represented the alleged victim in over 30 separate legal matters[.]"). Moore asserts that his written and verbal objections to Koistinen's representation of him were ignored and that "the conflicted counsel failed to protect [Moore's] interests." CV-4192, Doc. 1 at 2. Moore "repeatedly invoked his right to a self-defense hearing[6] and to discovery, including requests for Goetsch's criminal record, both in open court and by email. These requests were ignored by prosecutors, defense counsel, and the court." CV-4088, Doc. 1 at 6. Moore states that "[w]hile unrepresented and with conflicted counsel, [he] was denied the self-defense immunity hearing required under SDCL [§] 22-18-4.8, depriving him of a meaningful opportunity to assert statutory and constitutional rights." CV-4192, Doc. 1 at 7. When Moore informed Thoennes, the Circuit Court Administrator for the Second Judicial Circuit, of his concerns, Thoennes "dismissed them and stated that early appointment of counsel was 'rare.'" Id. at 4, 7.

Moore attributes these violations of his rights to the policies and practices of Minnehaha County, which "allow conflicts of interest to persist, delay or deny counsel, ignore objections by defendants, and fail to enforce statutory self-defense rights." Id. at 2. "As a direct result of these policies and practices, [Moore] was forced to proceed without counsel at a critical stage, denied a statutorily required hearing, and suffered severe and ongoing mental-health deterioration[.]" Id.

---

[6] Moore alleges that he was "denied a self-defense immunity hearing under SDCL 22-18-4.8, depriving him of meaningful opportunity to assert statutory and constitutional rights." CV-4192, Doc. 1 at 2. In addition to requesting a hearing pursuant to SDCL § 22-18-4.8 during the hearing, Moore alleges that he "invoked his right to a self-defense hearing" pursuant to SDCL § 22-18-4.8 while at the jail. CV-4088, Doc. 1 at 5. Moore cites to "SDCL § 22-18-8.4[]" here, CV-4088, Doc. 1 at 5, which the Court understands to be a typographical error. Moore refers to SDCL § 22-18-4.8 in his other complaints, see, e.g., CV-4192, Doc. 1 at 2, 6; CV-4194, Doc. 1 at 4, and § 22-18-8.4 was repealed by SL 1976, ch 158, § 18-5.

at 4; see also CV-4194, Doc. 1 at 2 ("[Moore] challenges the official policies, customs, and systemic failures of Minnehaha County and its Chief Public Defender, Traci Smith, which resulted in the violation of [Moore's] fundamental right to conflict-free legal representation and his right to due process of law."). "By affirmatively stripping [Moore] of his constitutional protections and primary legal defense, the County's agents effectively painted a target on his back, signaling to his known antagonist, Shawn Goetsch, that [Moore] was without credibility or protection within the justice system." CV-4194, Doc. 1 at 3.

Moore also takes issue with actions made by the Minnehaha County State's Attorney Office during the pendency of his simple assault charges:

> Pursuant to an unconstitutional policy of pursuing charges regardless of evidence, the Minnehaha County State's Attorney's Office, under the leadership of Defendant Dan Haggar, initiated a malicious prosecution against [Moore] for simple assault, despite being on notice of a clear self-defense claim and the complaining witness's history of violence and stalking.

CV-4193, Doc. 1 at 1. Moore alleges that "[t]he prosecution was pursued without probable cause and with malice, evidenced by the failure to disclose exculpatory evidence regarding the witness's lack of credibility." Id. at 2. See also CV-4088, Doc. 1-1 at 6. ("[d]espite ongoing requests, no Brady material was ever disclosed."). Moore alleges that both Minnehaha County and the Office of the Minnehaha County State's Attorney have unconstitutional polices and customs in place: "specifically, the policy and custom of pursuing prosecutions with deliberate indifference to probable cause and the policy of using known violent individuals as witnesses, thereby creating a state of danger for the accused, and then failing to address that danger." CV-4193, Doc. 1 at 2.

8

On April 15, 2025, the charges against Moore were dismissed without prejudice.[7] CV-4088, Doc. 1 at 6; see also CV-4193, Doc. 1 at 2 ("The case was ultimately terminated in [Moore's] favor."). Despite the charges against him being dismissed,[8] Moore alleges that "[t]he danger created by the prosecution has not ended." CV-4193, Doc. 1 at 4. "The State's Attorney's Office's affirmative act of prosecuting [Moore] using a known dangerous individual (Shawn Goetsch) as its key witness foreseeably created and increased the danger to [Moore], which has materialized in ongoing stalking, death threats, and physical assault attempts by Goetsch." Id. at 2. In the two weeks preceding the filing of Moore's complaint, "Goetsch has engaged in continuous stalking, issued death threats, and attempted to physically assault [Moore] on two separate occasions. This is part of a pattern of abuse that has persisted for over fifteen years but has escalated since the County lent its prosecutorial power to Goetsch's vendetta." Id. at 4.

Moore ostensibly contacted the South Dakota Attorney General's Office about his concerns, as he alleges that on February 21, 2025, Ernest Thompson, Deputy Attorney General, "acknowledged the AG's supervisory authority and outlined a complaint process." CV-4191, Doc. 1 at 5. Then, on September 8, 2025, Moore submitted a formal complaint to the Office of the Attorney General, stating that he was denied counsel at "initial appearances[,]"[9] that law

---

[7] In CV-4191, Moore alleges that "[t]he criminal charges referenced[,]" presumably the simple assault charges referenced throughout each of Moore's pending complaints, "were dismissed with prejudice under SDCL § 23A-44-5.1, satisfying the final termination requirement for § 1983 purposes." CV-4191, Doc. 1 at 5.

[8] Because the charges for which Moore was arrested were dismissed, his claims in this action do not appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). Under Heck, "[w]hen 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . .' § 1983 is not an available remedy." Skinner v. Switzer, 562 U.S. 521, 533 (2011) (quoting Heck, 512 U.S. at 487). That prohibition does not apply here given the dismissal of the charges.

[9] Moore uses the plural here. CV-4191, Doc. 1 at 4. But as stated earlier, Moore's complaints provide inconsistent facts regarding whether he was denied counsel at his initial appearance regarding his simple assault charge. See supra, at 6. It is not clear from his pleadings what other initial appearances, if any, Moore is referring to here.

9

enforcement has failed to protect him from harassment by Goetsch, and that "[i]mproper criminal charges ar[ose] from self-defense against Goetsch." Id. at 4. In this formal complaint to the Attorney General, Moore also included "bar complaints"[10] against Dan Haggar, Luke Lawton, Elise Rasmussen,[11] and Nicole Phillips. Id. Moore submitted this formal complaint to the Office of the Attorney General based on SDCL § 1-11-1(5), which provides that it is the duty of the attorney general to "exercise supervision over the several state's attorneys of the state in matters pertaining to the duties of their office[.]" SDCL § 1-11-1(5); CV-4191, Doc. 1 at 3.

Moore attaches a correspondence from Thompson dated September 24, 2025, stating that while the Attorney General has concurrent jurisdiction with the various state's attorneys under SDCL § 23-3-3, the Office of the Attorney General "has neither the authority nor the wherewithal to tell state's attorneys how to conduct their affairs, or to conduct their affairs for them. They are locally elected officials and answer to the local electorate." CV-4191, Doc. 1-1 at 6. The letter states that "the Attorney General's office is without authority to assist [Moore] in this matter[]" and that the office "will be taking no further action on this matter." Id.

### B.    Claims Alleged by Moore

#### 1.    Moore v. Larson, CV-4088

Moore states that he "brings this action under 42 U.S.C. § 1983 for violations of his constitutional rights arising from a baseless and malicious criminal prosecution initiated without probable cause, where [Moore] was denied a court-appointed attorney, denied a required self-defense hearing under state law, and repeatedly deprived of discovery and Brady material." CV-4088, Doc. 1 at 4. Moore states that the defendants' actions resulted in violations of his rights

---

[10] These "bar complaints" are presumably complaints Moore made to the State Bar of South Dakota.

[11] Rasmussen is not named as a defendant in any of Moore's complaints. See generally CV-4088, Doc. 1; CV-4191, Doc. 1; CV-04192, Doc. 1; CV-4193, Doc. 1; CV-4194, Doc. 1.

under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and that those violations "are part of systemic practices by Minnehaha County officials." Id.

In Count I of his complaint, Moore alleges a claim for malicious prosecution against Larson, Branch, Lawton, and Robertson. Id. at 6. Moore alleges that these defendants "caused legal process to be initiated against [him] without probable cause, resulting in a seizure and legal harm[,]" and in violation of his Fourth and Fourteenth Amendment rights. Id. Count II of Moore's complaint alleges a violation under the Fourteenth Amendment's due process clause against Lawton, Hagar, and Phillips. Id. Specifically, Moore claims that Lawton, Haggar, and Phillips "[s]uppressed material exculpatory evidence, including Goetsch's extensive criminal history[]" in violation of Brady v. Maryland, 373 U.S. 83 (1963). Id. at 7. In Count III, Moore alleges that he was denied counsel and due process in violation of the Sixth and Fourteenth Amendments. Id. Moore alleges that Koistinen, Smith, Leddige, Houwman, and unknown employees working at the Minnehaha County Jail on February 19, 2025, caused Moore to be "denied counsel at critical stages, assigned a conflicted public defender, and denied a state-mandated hearing." Id. Lastly, in Count IV of his complaint, Moore asserts that Thum, Haggar, Smith, and Houwman "allowed or maintained policies of ignoring counsel rights, discovery obligations, and due process protections" in violation of Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Id.

Moore alleges that "[q]ualified immunity does not shield officials who violate clearly established rights such as the right to counsel, to a Brady-compliant process, or to be free from prosecution without probable cause." Id. Additionally, he claims that "[p]rosecutorial immunity does not protect investigatory or administrative actions, such as fabricating facts or suppressing evidence[,]" and that "[j]udicial immunity does not apply to administrative decisions or policy-

11

making by judges." Id. Moore also states that "[p]ublic defenders may be liable when acting in concert with the state in systemic rights violations." Id. at 8.

As relief, Moore requests an unspecified amount of compensatory and punitive damages. Id. He also requests declaratory relief that the policies and conduct at issue are unconstitutional. Id. But Moore does not specify in what capacity he brings claims against the defendants. See generally id.

### 2.    Moore v. Jackley, CV-4191

Moore brings claims against Jackley and Thompson in their official capacities only. CV-4191, Doc. 1 at 1. Moore alleges that Thompson and Jackley, "as final policymakers, have a duty to ensure office policies do not deprive individuals of constitutional rights[,]" and that their "refusal to supervise, despite knowledge of ongoing violations, constitutes deliberate indifference under § 1983." Id. at 5. According to Moore, "[t]his deliberate inaction directly violated [Moore's] Sixth and Fourteenth Amendment rights, including the right to counsel at initial appearances." Id.

As relief, Moore requests that the Court "[d]eclare that Defendants' refusal to supervise county prosecutors violates SDCL § 1-11-1(5) and § 1983[]" and that their "refusal to intervene constitutes deliberate indifference to constitutional rights[.]" CV-4191, Doc. 1 at 6. Moore also requests injunctive relief requiring the defendants to:

1. Cease non-supervision of county prosecutors;
2. Implement a system to receive, investigate, and address complaints of constitutional violations;
3. Ensure compliance with Sixth and Fourteenth Amendments, including appointment of counsel at initial appearances; [and]
4. Prevent systemic denial of counsel to indigent or mentally ill defendants[.]

Id.

12

### 3.     Moore v. Minnehaha County, CV-4192

Moore brings claims "for violations of his Sixth and Fourteenth Amendment rights arising from systemic deficiencies in the county's indigent defense system[]" against Minnehaha County, Judge Houwman, Karl Thoennes, and the Minnehaha County Commission.  CV-4192, Doc. 1 at 1, 2.  Moore contends that "Minnehaha County's policies allow conflicts of interest to persist, delay or deny counsel, ignore objections by defendants, and fail to enforce statutory self-defense rights[,]" and that both Minnehaha County and its officials "demonstrate deliberate indifference to structural deficiencies, resulting in repeated and ongoing constitutional violations."  Id. at 2.  Moore alleges violations of his Sixth Amendment right to counsel because he was denied counsel at his initial arraignment.  Id. at 8.  He also alleges that his Fourteenth Amendment right to due process was violated because he was denied a self-defense immunity hearing under SDCL § 22-18-4.8.  Id. at 9.

Moore states that Minnehaha County is "[r]esponsible for funding and administering [the] court system, including indigent defense[,]" id. at 4, and that the county's "policies allow defendants to appear unrepresented, excessive caseloads and inadequate compensation delay appointments, and judicial and administrative practices interfere with independent representation."  Id. at 5–6.

Moore sues Houwman in her "official capacity only for enforcement of policies denying timely appointment of counsel."  Id. at 4.  Thoennes is also sued in his official capacity only "for enforcement of policies preventing counsel at initial arraignment."  Id.  Moore also brings claims against the Minnehaha County Commission in its official capacity only based on its role as the "governing body approving budgets and policies that result in constitutional violations."  Id.

13

Moore notes that the official capacity claims he brings "seek injunctive and declaratory relief only[,]" and that "[c]ompensatory damages are sought solely against Minnehaha County under Monell." Id. at 5. Moore's requests for declaratory relief include that this Court declare the policies denying timely counsel and statutory self-defense hearings to be unconstitutional. Id. at 3. As injunctive relief, Moore requests that the Court "[r]equire timely appointment of counsel, conflict screening, and enforcement of self-defense immunity rights." Id. Moore seeks compensatory damages from Minnehaha County for "mental-health harm caused by unconstitutional actions[,]" as well as attorneys' fees. Id. at 10.

### 4.    Moore v. Haggar, CV-4193

Moore also brings claims against Daniel Haggar and Minnehaha County. CV-4193, Doc. 1 at 1. Moore alleges violations of his Fourth and Fourteenth Amendment rights based on "the defendants' policy and custom of initiating and pursuing malicious prosecutions without probable cause and for creating a state of danger for [Moore] by using a known violent individual as their complaining witness and then failing to protect [Moore] from that individual's ongoing threats." Id. Moore states that "Defendant Haggar, in his official capacity as a policymaker, and Defendant Minnehaha County, as the responsible municipal entity, maintained a policy and custom of initiating and continuing prosecutions with deliberate indifference to the absence of probable cause." Id. at 4. Moore also claims that his prosecution constitutes a state-created danger, which violated his Fourteenth Amendment rights. Id. at 4–5.

Moore sues Haggar "in his official capacity only for prospective declaratory and injunctive relief related to his administrative and policymaking duties to train and supervise prosecutors and to implement office-wide constitutional polices." Id. at 2–3. Moore sues Minnehaha County "for its unconstitutional policies, customs, and deliberate indifference to the

14

systemic lack of constitutional safeguards in its prosecutorial functions pursuant to [Monell.]" Id. at 3.

Moore requests that this Court declare Minnehaha County and the State's Attorney's Office "policy of malicious prosecution and failure to protect individuals from dangers created by their prosecutorial actions unconstitutional." Id. at 2. Moore requests an injunction to "[c]ompel the State's Attorney's Office to implement constitutionally adequate policies for evaluating probable cause and for handling cases involving known violent witnesses." Id. Moore also seeks compensatory damages from Minnehaha County for "the severe and ongoing emotional, mental, and neurological harm caused by its unconstitutional policies and the state-created danger that persists to this day." Id. at 5. Moore also requests attorney fees and nominal damages from Minnehaha County for "the completed violation of [his] Fourth and Fourteenth Amendment rights that occurred during his criminal proceeding." Id.

### 5.    Moore v. Smith, CV-4194

Moore brings this action against Traci Smith, in her official capacity as the Chief Public Defender for the Minnehaha Public Defender's Office, and against Minnehaha County itself, for violations of his Sixth and Fourteenth Amendment rights. CV-4194, Doc. 1 at 1. Moore alleges that these constitutional violations "stem from the defendants' policy and custom of failing to adequately train, supervise, and implement procedures regarding conflicts of interest, and for fostering a policy whereby the Public Defender's Office acts in concert with the court and prosecutors to suppress the rights of indigent defendants." Id. Moore contends that while public defenders are not normally considered state-actors for purposes of liability under 42 U.S.C. § 1983, "a chief public defender acting in an administrative and policymaking capacity *is* a state actor[,]" and that "a public defender's office becomes a state actor when it conspires with

15

other state officials and abdicates its adversarial role to serve the administrative interests of the state." Id. at 2.

Moore asserts that Smith, "in her administrative and policymaking capacity, failed to establish adequate systems for screening conflicts of interest and fostered a custom of forgoing critical defensive procedures to maintain a cooperative relationship with other state actors, thereby abdicating the office's adversarial role." Id. As for his claims against Minnehaha County, Moore claims that the County "demonstrated deliberate indifference by permitting these systemic deficiencies to persist, making it the moving force behind the violation of [Moore's] constitutional rights to conflict-free counsel and due process." Id.

As relief, Moore requests that the Court "[d]eclare the County's and the Public Defender's Office's failure to implement adequate conflict-of-interest and due process policies unconstitutional[,]" and that the policies currently in place violate the Sixth and Fourteenth Amendments. Id. at 2, 6. He requests an injunction compelling "the implementation of a mandatory conflict-screening system and enforce the duty to pursue critical statutory hearings for defendants." Id. at 2. Moore also seeks compensatory damages "[f]or the mental and neurological harm caused by the County's policy of deliberate indifference[,]" nominal damages "[t]o vindicate the past, completed constitutional violation and prevent this action from being dismissed as moot[,]" and attorney's fees and costs. Id.

### 6.    Course of Proceedings Analysis

In CV-4088, Moore does not specify in what capacity he brings claims against the defendants. See generally, CV-4088, Doc. 1. When a plaintiff does not specifically state in which capacity he or she sues the defendants, the Court must apply the course of proceedings test. S.A.A. v. Geisler, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "The fundamental

question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'" Id. at 1139 (quoting Daskalea v. D.C., 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)).

"Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." Id. (footnote omitted). The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." Id. Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. Goodwin v. Summit Cnty., 703 F. App'x 379, 382 (6th Cir. 2017); Briggs, 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." S.A.A., 127 F.4th at 1140 (quoting Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)).

Although Moore does not specify in what capacity he sues Houwman, Haggar, and Smith in CV-4088, he specifically states in his other pending actions involving these defendants, and concerning similar claims and the same set of operative facts, that he sues these defendants in their official capacities only. While Moore provides very generalized statements about his claims against these defendants in CV-4088, see CV-4088, Doc. 1 at 6–8, Moore's subsequent complaints provide far more detail regarding these defendants and their involvement in the alleged violation of Moore's constitutional rights, and allege that the violations of his rights arise from policies and customs instituted by these defendants. See CV-4192, Doc. 1; CV-4193, Doc.

17

1; CV-4194. See CV-4192, Doc. 1; CV-4193, Doc. 1; CV-4194. Therefore, this Court liberally construes Moore's complaint in CV-4088 as bringing claims against Houwman, Haggar, and Smith in their official capacities only.

As for the remaining defendants in CV-4088, Moore seeks both injunctive and monetary relief, which suggests that he intends to sue the defendants in both their individual and official capacities. See CV-4088, Doc. 1; see also Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Moore also implies that the defendants acted in accordance with a government policy or custom, CV-4088, Doc. 1 at 6, and alleges that qualified immunity does not apply, id. at 7. Therefore, this Court deems Moore's complaint in CV-4088 to allege claims against Larson, Branch, Thum, Lawton, Phillips, Robertson, Leddige, Koistinen, Milstead, and the unknown employees working at the Minnehaha County Jail on February 19, 2025, in both their individual and official capacities.

## C.     Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), the court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights

18

complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." Williams v. Willits, 853 F.2d 586, 588 (8th Cir. 1988) (citing Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'"

19

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Twombly, 550 U.S. at 556).

### D.    Legal Analysis

#### 1.    Claims Previously Dismissed with Prejudice

In Moore v. Houwman, Moore filed a complaint naming many of the same defendants and involving the same set of operative facts and as in the complaints here. Moore v. Houwman, 4:25-CV-04026-KES, Docs. 1, 10. Moore named Judge Houwman as a defendant, and alleged that Judge Houwman's appointment of conflicted counsel violated his Sixth Amendment rights. See id. at Doc. 17 at 4–5. When screening Moore's complaint pursuant to 28 U.S.C. § 1915, the court determined that Judge Houwman was entitled to judicial immunity against any damages sought from her in her individual capacity and dismissed individual capacity claims against her with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii). Id. at 13–14, 23. The court also dismissed with prejudice claims against Judge Houwman in her official capacity for money damages and declaratory relief under 28 U.S.C. § 1915(e)(2)(B)(ii), and found that Moore's requests for injunctive relief were moot. Id. at 14–16.

Here, Moore brings claims against Judge Houwman in her official capacity[12] in Moore v. Larson, CV-4088 and Moore v. Minnehaha County, CV-4192. Because claims against Judge Houwman in her official capacity for declaratory relief, and regarding substantially similar claims and involving the same set of operative facts, were previously dismissed with prejudice,

---

[12] This Court applied the course of proceedings test to determine that Moore intended to sue Judge Houwman in her official capacity only. See supra, at 16–18. But even if this Court did liberally construe Moore's complaint to be alleging claims against Judge Houwman in her individual capacity, these claims would be dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). The claims against Judge Houwman in the pending actions involve substantially similar claims and the same set of operative fact as in Moore v. Houwman, where the court dismissed individual capacity claims against Judge Houwman with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii). Moore v. Houwman, 4:25-CV-04026-KES, Doc. 17 at 13–14, 23.

Moore's official capacity claims against Judge Houwman for declaratory relief[13] are dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).[14]

Moore also previously brought similar claims against Minnehaha County Deputy State's Attorneys Nicole Phillips and Luke Lawton, as well as Minnehaha County State's Attorney Dan Haggar,[15] alleging a series of violations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). Moore v. Houwman, 4:25-CV-04026-KES, Doc. 17 at 19–20. On screening, the court recognized that Moore's claims against these defendants were barred by absolute immunity under Imbler v. Pachtman, 424 U.S. 409, 427 (1976), and dismissed claims against Phillips, Lawton, and Haggar in their individual capacities with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). Moore v. Houwman, 4:25-CV-04026-KES, Doc. 17 at 20.

Lawton and Phillips are named as defendants in CV-4088. See CV-4088, Doc. 1 at 2. Moore's individual capacity claims against Lawton and Phillips in his pending suits involve substantially similar claims and concern the same set of operative facts as in Moore v. Houwman, 4:25-CV-04026-KES. Therefore, because claims against Lawton and Phillips in their individual capacities were previously dismissed with prejudice in Moore v. Houwman, 4:25-CV-

---

[13] As stated above, official capacity claims against Judge Houwman for money damages were previously dismissed with prejudice. Moore v. Houwman, 4:25-CV-04026-KES, Doc. 17 at 14. Here, it is not clear whether Moore intended to bring claims against Judge Houwman in her official capacity for monetary damages. Compare CV-4088, Doc. 1, with CV-4192, Doc. 1 at 4. To the extent that Moore intended to bring claims against Judge Houwman in her official capacity for monetary damages, these claims are also dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

[14] Moore also brings claims against Judge Houwman in her official capacity for injunctive relief, which this Court will address below.

[15] While Moore did not specify in which capacity he sues these defendants in CV-4088, this Court applied the course of proceedings test to determine that Moore intended to sue Phillips and Lawton in their individual and official capacities, and Haggar in his official capacity only. See supra, at 16–18. Even if this Court applied the course of proceedings test to determine that Moore intended to sue Haggar in his individual capacity, those claims would be dismissed for the same reasons the Court dismisses individual capacity claims against Lawton and Phillips.

21

04026-KES, Moore's individual capacity claims against Lawton and Phillips are dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).[16]

### 2.      Claims Against Minnehaha County

Moore names Minnehaha County as a defendant in CV-4192, CV-4193, and CV-4194. See CV-4192, Doc. 1; CV-4193, Doc. 1; CV-4194, Doc. 1.  A municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right.  Monell v. Dep't of Soc. Servs., 436, U.S. 658, 694 (1978). See also Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (recognizing that because "[a] political subdivision may not generally be held vicariously liable under [§]1983 for the unconstitutional acts of its employees[,]" a political subdivision can only be held liable for the unconstitutional acts of its employees under § 1983 "when those acts implement or execute an unconstitutional policy or custom of the subdivision.").  Although Moore need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss[,]" Crumpley-Patterson v. Trinity Lutheran Hospital, 388 F.3d 588, 591 (8th Cir. 2004), his complaint must, at a minimum, allege facts that "would support the existence of an unconstitutional policy or custom[,]" Doe ex rel. Doe v. School District of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003).

"A municipality may only be liable for a constitutional violation resulting from (1) an 'official municipal policy,' (2) an 'unoffical custom,' or (3) 'failure to train or supervise.'" Poemoceah v. Morton Cnty., 117 F.4th 1049, 1057 (8th Cir. 2024) (citing Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013)).  "To prove the existence of a policy, a

---

[16] Moore also brings official capacity claims against Lawton and Phillips, which this Court addresses below.

22

plaintiff must point to 'an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" Schaffer v. Beringer, 842 F.3d 585, 596 (8th Cir. 2016) (quoting Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must show

> (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom.

Poemoceah, 117 F.4th at 1057 (citation modified). "In § 1983 cases based upon municipal custom deliberate indifference is ordinarily shown by a pattern of constitutional violations." Molina v. City of St. Louis, 766 F. Supp. 3d 857, 870 (E.D. Mo. 2025) (citing Perkins v. Hasting, 915 F.3d 512, 521 (8th Cir. 2019)).

Lastly, to establish municipal liability based on failure to train, a plaintiff must show that "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." Poemoceah, 117 F.4th at 1057–58 (alterations in original) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

Liberally construing his complaint, Moore attempts to establish municipal liability based on the existence of an unofficial policy or custom and the failure to train. See CV-4192, Doc. 1;

23

CV-4193, Doc. 1; CV-4194, Doc. 1.  Moore asserts that violations of his Sixth and Fourteenth Amendment rights have occurred due to "systemic deficiencies" in Minnehaha County's indigent defense system.  CV-4192, Doc. 1 at 2.  Moore contends that "Minnehaha County is liable under Monell for policies and customs that caused repeated constitutional violations[,]" and that it "permits conflicts of interest to persist, ignores objections by defendants, delays or denies counsel, and fails to enforce statutory self-defense rights."  Id. at 9.  Moore also alleges that Minnehaha County's "policy and custom of initiating and pursuing malicious prosecutions without probable cause" resulted in a violation of his Fourth and Fourteenth Amendment rights.  CV-4193, Doc. 1 at 1.  Moore contends that "Minnehaha County has demonstrated deliberate indifference by permitting these unconstitutional prosecutorial policies and the resulting danger to persist."  Id. at 2.

While Moore broadly references the existence of policies and customs that have allegedly deprived him of his rights, his complaint is based on a single incident in February of 2025.  See generally CV-4192, Doc. 1; CV-4193, Doc. 1; CV-4194, Doc. 1.  While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the Iqbal standard in this context, . . . it has held that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability."  Ball-Bey v. Chandler, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citations omitted).  See also Quinn v. Doherty, 637 F. Supp. 3d 647, 667 (D. Minn. 2022) ("But Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."); Yang v. City of Minneapolis, 607 F. Supp. 3d 880, 898 (D. Minn. 2022) ("Alleging a single instance of misconduct is not sufficient to support an inference of a custom or unofficial policy of the City." (citation omitted)).

24

Moore states that he "put the County's final policymakers on direct notice of . . . unconstitutional conduct[]" when he "communicated his concerns in writing directly to the Minnehaha County Commission via email, detailing the malicious nature of [his] prosecution and the dangerous actions of the state's witness." CV-4193, Doc. 1 at 3. But allegations that he informed policymakers of a single incident do not demonstrate "[d]eliberate indifference to or tacit authorization of such conduct[.]" Poemoceah, 117 F.4th at 1057 (citation omitted). As stated above, a "pattern of injuries [is] ordinarily necessary to establish municipal culpability and causation[,]" Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 409 (1997), and Moore's complaints do not show the existence of a larger policy or custom "so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61.

Further, Moore's allegations are purely conclusory. A plaintiff fails to plead an actionable Monell claim when "the Complaint does not provide any description of any policy, custom or practice at all[,]" Triemert v. Washington County, No. 13-CV-1312 (PJS/JSM), 2013 WL 6729260, at *12 (D. Minn. Nov. 18, 2013), aff'd, 571 F. App'x 509 (8th Cir. 2014) (per curiam), and contains only "boilerplate allegations asserting the mere generic elements of a Monell claim without any factual allegations specific to [the] case[,]" D.B. v. Hargett, No. 13–2781 (MJD/LIB), 2014 WL 1371200, at *6 (D. Minn. Apr. 8, 2014). Here, Moore's allegations are similar to the conclusory allegations the court found insufficient to state a Monell claim in Triemert:

> 103. Prior to May 29, 2013, Defendant Washington County developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in Washington County, which caused the constitutional violations of Mr. Triemert's rights.
>
> 104. It was the policy and/or custom of Washington County to inadequately supervise and train its employees, including Defendant Deputies Sullivan and Volk,

25

> thereby failing to adequately discourage further constitutional violations on the part of its employees.
>
> 105. These policies and/or customs were the cause of the violations of Mr. Triemert's constitutional rights alleged herein.

Triemert, 2013 WL 6729260, at *12.  But these "vague and conclusory allegations that [a plaintiff's] injuries were caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a Monell claim[.]" Id.

Moore also alleges that violations of his Sixth and Fourteenth Amendment rights occurred based on Minnehaha County's "policy and custom of failing to adequately train, supervise, and implement procedures regarding conflicts of interest, and for fostering a  policy whereby the Public Defender's Office acts in concert with the court and prosecutors to suppress the rights of indigent defendants." CV-4194, Doc. 1 at 1. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61.  But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train[,]" and "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (last citation modified).

Here, while Moore states that he "communicated his specific concerns regarding the conflict of interest and the denial of his due process rights [during the February 2025 incident] to a Minnehaha County Commissioner[,]" CV-4191, Doc. 1 at 4, notice of a single incident does not show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." Poemoceah, 117 F.4th at 1058 (alteration in

26

original) (citation omitted). Instead, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (citing Bryan Cnty., 520 U.S. at 409). Where a plaintiff "makes only conclusory allegations without asserting sufficient facts to support a claim that the need for training was so obvious that any of the individual defendants were deliberately indifferent to it[,]" a Monell claim fails. Poemoceah, 117 F.4th at 1058.

Even with a liberal construction of his complaint, Moore fails to state a cognizable claim under Monell. Moore's claims against Minnehaha County are therefore dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. Claims Against Minnehaha County Employees

#### a. Official Capacity Claims

Moore brings claims against Minnehaha County employees in their official capacities: Minnehaha County Deputy State's Attorneys Luke Lawton and Nicole Phillips; Minnehaha County State's Attorney Dan Haggar; employees of the Minnehaha County Public Defender's Office Jason Koistinen and Traci Smith; Minnehaha County Sheriff Mike Milstead, and unnamed employees of the Minnehaha County Jail working on February 19, 2025. CV-4088, Doc. 1 at 2–3; CV-4193, Doc. 1 at 1 (suing Haggar specifically in his official capacity); CV-4194, Doc. 1 at 1 (suing Smith specifically in her official capacity).

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Moore's claims against employees of Minnehaha County in their official capacities are, in effect, against Minnehaha County, the governmental entity

27

employing them. However, as discussed above, Moore has not alleged facts that would support a claim that Minnehaha County has executed an unconstitutional policy or custom. Thus, his claims against Lawton, Phillips, Haggar, Koistinen, Smith, Milstead, and the unnamed employees of the Minnehaha County Jail in their official capacities are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### b.    Individual Capacity Claims

#### i.    Koistinen

Moore alleges that his Sixth and Fourteenth Amendment rights were violated by Jason Koistinen, a public defender at the Minnehaha County Public Defender's Office, when Moore was "denied counsel at critical stages, assigned a conflicted public defender, and denied a state-mandated hearing." CV-4088, Doc. 1 at 7.

In Moore v. Houwman, the court informed Moore that the Eighth Circuit has recognized that public defenders operate as private actors, not state actors. Moore v. Houwman, 25-CV-4026-KES, Doc. 17 at 11 (citing White v. Rogers, 221 F.3d 1346 (Table) (8th Cir. 2000) (per curiam); Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981)). This stems from the notion that "when a public defender represents an indigent defendant in a state criminal proceeding, he is 'not acting on behalf of the State; he is the State's adversary.'" Johnson v. United States, No. 8:25CV675, 2026 WL 1091741, at *3 (D. Neb. Apr. 22, 2026) (quoting Polk Cnty, 454 U.S. at 322 n.13).

Here, Moore argues that "[p]ublic defenders may be liable when acting in concert with the state in systemic rights violations[,]" CV-4088, Doc. 1 at 8, which this Court understands to be a civil conspiracy claim under § 1983. A private individual may be characterized as a state actor "if, though only if, there is such a close nexus between the State and the challenged action

28

that seemingly private behavior may be fairly treated as that of the State itself." Brentwood

Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (citation modified).

Therefore, a private party may be held liable under § 1983 if the private party "is a willful

participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27–28

(1980).

"Allegations that a public defender has conspired with judges or other state officials to

deprive a [plaintiff] of federally protected rights may state a claim under § 1983." Manis v.

Sterling, 862 F.2d 679, 681 (8th Cir. 1988) (citing Tower v. Glover, 467 U.S. 914, 923 (1984)).

But "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least,

that there was a mutual understanding, or a meeting of the minds, between the private party and

the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993). "Allegations of

conspiracy . . . must be pled with sufficient specificity and factual support to suggest a 'meeting

of the minds[,]'" and conclusory allegations of conspiracy are insufficient. Manis, 862 F.2d at

681 (quoting Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam))

Here, Moore provides no facts alleging a meeting of the minds between Koistinen and the

state. See generally CV-4088, Doc. 1. While Moore alleges that the constitutional violations he

experienced "are part of a systemic policy of ignoring the rights of indigent defendants in

Minnehaha County[,]" id. at 6, he provides no facts that there was a meeting of the minds

between Koistinen and state actors, or that the state had "so far insinuated itself into a position of

interdependence with the charged party that it must be recognized as a joint participant in the

challenged activity[.]" P.G. v. Ramsey Cnty., 141 F. Supp. 2d 1220, 1226 (D. Minn. 2001)

(quoting Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs., 871 F.2d 474, 477 (4th Cir.

1989)). Moore states only that "[p]ublic defenders *may* be liable when acting in concert with the

29

state in systemic rights violations[,]" but provides no facts showing that Koistinen acted in concert with the state.  CV-4088, Doc. 1 at 8 (emphasis added).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified).  Conclusory statements that there is a policy and custom of "acting in concert with the court and prosecutors to deny defendants their statutory and constitutional rights[]" are not enough.  CV-4194, Doc. 1 at 2.  Therefore, Moore's § 1983 conspiracy claim against Koistinen in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### ii.        Milstead

The only mention Moore makes of Milstead in his complaint is when listing Milstead as a defendant in the case caption.  See CV-4088, Doc. 1 at 3.  But "[s]imply placing a defendant's name in the caption is not enough to assert their responsibility." Mencin v. City of Troy Police, No. 4:24-CV-852, 2024 WL 4370846, at *3 (E.D. Mo. Oct. 2, 2024).  See also Krych v. Hvass, 83 F. App'x 854, 855 (8th Cir. 2003) (per curiam) (holding that a plaintiff "failed to state any claim whatsoever" against defendants when "he merely listed these individuals as defendants in his complaint and did not allege they were personally involved in the constitutional violations."); Batchelder v. I.N.S., 180 F. App'x 614, 615 (8th Cir. 2006) (per curiam) (affirming the district court's dismissal of a complaint because its "largely unintelligible and incomprehensible allegations fail to provide fair notice of [the plaintiff's] claims and the grounds upon which they

30

rest."). Therefore, Moore's claims against Milstead[17] are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### iii.   Minnehaha County Jail Staff

Moore brings claims against staff at the Minnehaha County Jail working on February 19, 2025. CV-4088, Doc. 1 at 3. According to Moore, he "invoked his right to a self-defense hearing" pursuant to SDCL § 22-18-4.8 while he was at the jail, and as a result, brings Sixth and Fourteenth Amendment claims against jail staff, contending that he was "denied counsel at critical stages, assigned a conflicted public defender, and denied a state-mandated hearing." Id. at 5, 7. But these statements do not make clear why Moore has a civil cause of action against these individual defendants. While pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. Therefore, Moore's individual capacity claims against unknown staff working at the Minnehaha County Jail on February 19, 2025, are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.   Claims Against City of Sioux Falls Employees

Moore names Sioux Falls Police Officer Evan Larson and Detective Ian Branch as defendants. CV-4088, Doc. 1 at 1. Moore alleges that Branch and Larson violated his Fourth and Fourteenth Amendments by "caus[ing] legal process to be initiated against [him] without

---

[17] Moore lists this defendant as "Mark Milbrandt, county Sheriff" at the Minnehaha County Jail. CV-4088, Doc. 1 at 3. As stated previously, Mark Milbrandt is a previous sheriff of Brown County, and Mike Milstead is the current Minnehaha County Sheriff. See Sheriff's Office, Minnehaha County Sheriff's Office, https://www.minnehahacounty.gov/dept/so/so.php (last visited Apr. 28, 2026). To the extent that Moore intended to state claims against Mark Milbrandt, these claims are dismissed for the same reasons as Moore's claims against Milstead.

probable cause, resulting in a seizure and legal harm." Id. at 6. Moore also brings a claim for "Monell liability" against Jon Thum, the Chief of Police for the Sioux Falls Police Department, alleging that he "allowed or maintained policies of ignoring counsel rights, discovery obligations, and due process protections." Id. at 7. Pursuant to the course of proceedings analysis discussed above, the Court liberally construes Moore's complaint as asserting claims against these defendants in both their individual and official capacities. See supra, at 16–18.

### a.    Official Capacity Claims

Beginning with the official capacity claims against these defendants, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch, 627 F.3d at 1257. A municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell, 436 U.S. at 694. Therefore, Moore's claims against Larson, Branch, and Thum in their official capacities as employees of the Sioux Falls Police Department are, in effect, against the City of Sioux Falls, the governmental entity employing Larson, Branch, and Thum.

But Moore has not alleged facts that would support a claim that the City of Sioux Falls has executed an unconstitutional policy or custom. Moore's claims against Larson and Branch reference a specific incident on February 12, 2025, where Moore alleges that Larson failed to conduct an investigation to "discredit[] Goetsch's claim" against Moore, and that Branch "obtained a warrant for [Moore's] arrest without probable cause." CV-4088, Doc. 1 at 5. But "[t]his isolated event does not establish a custom." Quinn, 637 F. Supp. 3d at 667; see also Yang, 607 F. Supp. 3d at 898 ("Alleging a single instance of misconduct is not sufficient to

32

support an inference of a custom or unofficial policy of the City." (citation omitted)). These allegations fall far short of showing a "continuing, widespread, persistent pattern of unconstitutional misconduct" necessary to establish the existence of a policy or custom. Poemoceah, 117 F.4th at 1057.

Moore's only statement of his claim against Thum is that Thum "allowed or maintained policies of ignoring counsel rights, discovery obligations, and due process protections." CV-4088, Doc. 1 at 7. But this vague and conclusory statement is not enough to establish a policy or custom. See Triemert, 2013 WL 6729260, at *12 (stating that "vague and conclusory allegations that [a plaintiff's] injuries were some caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a Monell claim."). Here, Moore "makes only conclusory allegations without asserting sufficient facts to support a claim that the need for training was so obvious" that Thum was deliberately indifferent to the need for more or different training. Poemoceah, 117 F.4th at 1057–58.

Therefore, Moore's claims against Larson, Branch, and Thum in their official capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### b.    Individual Capacity Claims

### i.    Larson

Liberally construing his complaint, Moore is alleging a Fourteenth Amendment substantive due process violation based on Larson's failure to conduct an adequate investigation into Goetsch's claims against him. CV-4088, Doc. 1 at 5, 6. "To establish a violation of due process based on a failure to investigate, [a plaintiff] must show that [the defendants]

33

'intentionally or recklessly failed to investigate, thereby shocking the conscience.'" Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009) (citation omitted). The Eighth Circuit has held that

> the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence.

Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012) (quoting Akins, 588 F.3d at 1184). "Negligent failure to investigate other leads or suspects does not violate due process[,]" and "[e]ven allegations of gross negligence would not rise to the level of a constitutional violation." Wilson v. Lawrence Cnty., 260 F.3d 946, 955 (8th Cir. 2001) (citations omitted).

Here, Moore's allegations regarding Larson's conduct are limited to the statement that "Officer Evan Larson responded to Goetsch but never contacted [Moore] or conducted any investigation that would have discredited Goetsch's claim." CV-4088, Doc. 1 at 5. Moore provides no facts that Larson's failure to conduct an investigation was reckless or intentional. See generally id. Even with a liberal construction of his complaint, this allegation falls short of conscience-shocking behavior that would establish a constitutional violation. See Torgerson v. Roberts Cnty., 139 F.4th 638, 645 (8th Cir. 2025) ("[N]either negligent nor grossly negligent failure to investigate amounts to a constitutional violation[,]" and "[o]nly the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to the conscience-shocking level."). Therefore, Moore's Fourteenth Amendment claim against Larson in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

34

## ii.    Branch

Liberally construing his complaint, Moore brings a Fourth Amendment claim against Branch because he obtained a warrant for Moore's arrest without probable cause. CV-4088, Doc. 1 at 5. The Fourth Amendment protects against "unreasonable searches and seizures[,]" U.S. Const, amend. IV, and requires an arrest to be supported by probable cause, Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005). An officer has probable cause for an arrest "when the totality of the circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (citation omitted). "When the alleged constitutional violation involves an arrest pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Williams v. City of Alexander, 772 F.3d 1307, 1311 (8th Cir. 2014) (citation modified).

Here, Moore provides nothing more than conclusory allegations to support his Fourth Amendment claim. See generally CV-4088, Doc. 1. Moore states that Branch did not question Moore, that "[a]ny official reviewing Goetsch's history would know he was not a credible complainant[,]" and that Magistrate Judge Robertson approved the warrant for Moore's arrest without conducting a proper probable cause analysis. Id. at 5. But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citation modified). Therefore, Moore's Fourth Amendment claim against Branch in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

35

### iii.    Thum

Moore brings a claim for "Monell liability" against Thum. CV-4088, Doc. 1 at 7. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "Section 1983 liability is personal[,]" and a plaintiff seeking to establish liability against supervisory officials "must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.'" Jones v. City of St. Louis, 104 F.4th 1043, 1049 (8th Cir. 2024) (citations omitted).

While a local government official may be held liable pursuant to Monell, Moore does not allege what claims he is attempting to assert against Thum, and only states that Thum "allowed or maintained policies of ignoring counsel rights, discovery obligations, and due process protections." CV-4088, Doc. 1 at 7. Other than this statement, Moore provides no other facts regarding Thum's involvement in allowing or maintaining these policies, any specifics on what these policies were, or that Thum was responsible for them. See generally id. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone, 364 F.3d at 914. As stated previously, this Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. Therefore, Moore's claims against Thum in his individual capacity are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

36

5.      **Claims Against Judges**

a.      **Individual Capacity Claims**

Judges are generally immune from suit if the judge had jurisdiction over the party.  See Stump v. Sparkman, 435 U.S. 349, 356 (1978) ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.").  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  Id. at 356–57 (footnote omitted) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)).  Judges are immune from suit with two narrow exceptions.  See Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012).  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  Id. (quoting Mireles v. Waco, 502 U.S. 9, 11–12 (1991)).

In evaluating the first exception, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  Just. Network Inc. v. Craighead Cnty., 931 F.3d 753, 760 (8th Cir. 2019) (quoting Stump, 435 U.S. at 362).  As for the second exception, the Supreme Court of the United States has instructed courts to "construe broadly the scope of the judge's jurisdiction where the issue is the immunity of a judge."  Schottel, 687 F.3d at 373 (citation modified).  "[A]n action—taken in the very aid of the judge's jurisdiction over a matter before him—cannot be said to have been taken in the absence of jurisdiction."  Mireles, 502 U.S. at 13.

37

Moore states that judicial immunity does not apply here because it "does not apply to administrative decisions or policy-making by judges." CV-4088, Doc. 1 at 7. But Moore's claims against Magistrate Judge Robertson and Magistrate Judge Leddige do not show that these judges were engaged in policymaking or making administrative decisions such that judicial immunity should not apply here.

Beginning with Moore's claims against Judge Robertson, Moore brings claims against Judge Robertson for violations of his Fourth and Fourteenth Amendment rights, claiming that Judge Robertson "approved [the warrant for Moore's arrest] without conducting a proper probable cause analysis." Id. at 5. As a magistrate judge, Judge Robertson has authority to issue an arrest warrant. See SDCL § 16-12B-5 (providing that "[a] magistrate court with a magistrate judge presiding has concurrent jurisdiction with the circuit courts to issue summonses, warrants of arrest, and warrants for searches and seizures."). "Given [a judge's] statutory authority to issue warrants, even if the warrant to arrest [the plaintiff] was improper under the circumstances," a judge is still entitled to judicial immunity. Hamilton v. City of Hayti, 948 F.3d 921, 926 (8th Cir. 2020). "Judicial immunity extends even to 'the commission of grave procedural errors.'" Id. (quoting Stump, 435 U.S. at 359). Therefore, Moore's claims against Magistrate Judge Robertson in his individual capacity are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

As for Moore's claims against Magistrate Judge Leddige, Moore alleges that Judge Leddige violated his Sixth and Fourteenth Amendment rights, stating that he was "denied counsel at critical stages, assigned a conflicted public defender, and denied a state-mandated hearing." CV-4088, Doc. 1 at 7. But Moore does not provide any facts demonstrating Judge Leddige's specific involvement in this alleged denial of Moore's rights. See generally id.

38

Although, as stated above, Moore contends that "[j]udicial immunity does not apply to administrative decisions or policy-making by judges[,]" he provides no facts showing that Judge Leddige was acting in an administrative capacity, and indeed provides no facts explaining Judge Leddige's specific involvement.  Id. at 7.  Because Moore provides no facts even suggesting that Judge Leddige was acting outside of a judicial capacity, judicial immunity applies, and Moore's claims against Magistrate Judge Leddige in his individual capacity are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### b.      Official Capacity Claims

#### i.        Claims for Monetary Damages Against Judges Robertson and Leddige

Moore requests monetary damages from the defendants.  CV-4088, Doc. 1 at 8.  But Magistrate Judges Robertson and Leddige are employees of the State of South Dakota.  See Gomez v. Elk Point Union Cnty., 4:24-CV-04216-LLP, 2025 WL 775832, at *6 (D.S.D. Mar. 11, 2025) (recognizing county circuit court judges are employees of the State of South Dakota).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  Therefore, Moore's official capacity claims are construed as claims against the State of South Dakota itself.  While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  Id. at 66.  The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity.  Id.  The State of South Dakota has not waived its sovereign immunity.  Thus, Moore's claims against Magistrate Judges

39

Robertson and Leddige in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

**ii.**     **Claims for Injunctive and Declaratory Relief Against Judges Houwman, Robertson, and Leddige**

Moore also brings claims against Judge Houwman in her official capacity for injunctive relief[18] and against Magistrate Judges Robertson and Leddige in their official capacities for injunctive and declaratory relief. CV-4088, Doc. 1 at 8; CV-4192, Doc. 1 at 9–10. But Moore lacks standing to bring these claims.

"Pursuant to Article III's case-or-controversy requirement, a plaintiff must have standing to bring a lawsuit." Farella v. Benton Cnty. Dist. Ct., Div. 4, 176 F.4th 562, 566 (8th Cir. 2026). "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit[.]" Raines v. Byrd, 521 U.S. 811, 818 (1997) (citation omitted). "Standing requires (1) an injury in fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision." Curtis Lumber Co. v. La. Pac. Corp., 618 F.3d 762, 770 (8th Cir. 2010) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). "Past injury alone does not show standing to seek injunctive or declaratory relief[,]" but "[i]f a plaintiff has a past injury-in-fact, meets the other requirements of standing, and shows that he faces 'a real and immediate threat that [he] would again suffer similar injury in the future,' then he has standing to seek injunctive or declaratory relief." Roberts v. Thompson, No. 25-1475, 2026 WL 1409990, at *4 (8th Cir. May 20, 2026) (last alteration in original) (citations omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (citation modified).

---

[18] This Court dismissed official capacity claims against Judge Houwman for declaratory relief with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). See supra, at 20–21.

40

In Farella, the plaintiffs alleged that a state court judge's bail hearing practices violated their Sixth Amendment right to counsel and their Fourteenth Amendment rights to due process and equal protection of the law and sought a "permanent injunction and a declaratory judgment recognizing that indigent persons must have appointed counsel present at bail hearings." Farella, 176 F.4th at 564–65. But the Eighth Circuit held that the plaintiffs lacked standing to bring claims for injunctive and declaratory relief because they "cannot demonstrate that they face 'a real and immediate threat that [they] would again suffer similar injury in the future[,]'" and because the possibility of future harm was "too speculative to establish standing." Id. at 567 (first alteration in original) (citation omitted). Here, Moore provides no facts that he faces a "real and immediate threat" of facing a similar injury in the future. Id.; see also CV-4088, Doc. 1; CV-4192, Doc. 1. The charges surrounding the incident where Moore alleges his constitutional rights were violated have been dismissed. CV-4192, Doc. 1 at 4; see also CV-4088, Doc. 1 at 6; CV-4193, Doc. 1 at 2. While Moore alleges generally that there is an "ongoing risk of constitutional deprivation[,]" CV-4192, Doc. 1 at 7, this allegation is "too speculative to establish standing." Farella, 176 F.4th at 567.

The Eighth Circuit noted that plaintiffs may be able to establish standing by claiming that "their past exposure to illegal conduct is accompanied by continuing, present adverse effects." Id. (citation modified). But the Eighth Circuit ultimately determined that the plaintiffs in Farella could not establish standing because their request for relief would not "alleviate the harm" associated with their past injury. Id. Here, Moore alleges that he has "suffered severe and ongoing mental-health deterioration even after the underlying charges were dismissed." CV-4192, Doc. 1 at 4. Moore also contends that despite the charges against him being dismissed, "[t]he danger created by the prosecution has not ended[,]" and that he has faced "ongoing

41

stalking, death threats, and physical assault attempts by Goetsch." CV-4193, Doc. 1 at 2, 4. But, as in Farella, Moore does not explain how his requested relief would alleviate the harm associated with the alleged constitutional violations that occurred in February of 2025. Farella, 176 F.4th at 567. Because Moore has failed to allege a redressable injury, he lacks standing to bring these claims. Therefore, Moore's claims against Judge Houwman in her official capacity for injunctive relief and against Magistrate Judges Robertson and Leddige in their official capacities for injunctive and declaratory relief are dismissed for lack of standing.[19]

### 6. Claims Against Thoennes

Moore sues Karl Thoennes, the Circuit Court Administrator for the Second Judicial Circuit,[20] in his official capacity only "for enforcement of policies preventing counsel at initial arraignment." CV-4192, Doc. 1 at 4. Moore states that his "[o]fficial-capacity claims seek injunctive and declaratory relief only." Id. at 5. Moore's claims against Thoennes revolve around the same February 2025 incident referenced throughout this order. See generally id. Moore states that he raised concerns to Thoennes about being "unrepresented and with conflicted counsel[,]" as well as the denial of a "self-defense immunity hearing required under SDCL [§] 22-18-4.8," which Moore alleges "depriv[ed] him of a meaningful opportunity to assert statutory

---

[19] This Court also notes that "state sovereign immunity shields state-court judges and clerks from prospective relief that will interfere with their ability to 'act[ ] in any case.'" Courthouse News Serv. v. Gilmer, 48 F.4th 908, 912 (8th Cir. 2022) (alteration in original) (quoting Ex parte Young, 209 U.S. 123, 163 (1908)). Therefore, to the extent that Moore requests "relief that would require this Court to interfere with his state court proceedings . . . state sovereign immunity bars such relief." Gofan v. Gibbs, No. 25-CV-1892, 25-CV-1973, 2025 WL 1650191, at *4 (D. Minn. May 20, 2025).

[20] As an employee of the Second Judicial Circuit, Thoennes is employed by the State of South Dakota. The employees of circuit courts in South Dakota are employees of the South Dakota Unified Judicial System and are, thus, employees of the State of South Dakota. See S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, *circuit courts of general jurisdiction* and courts of limited original jurisdiction as established by the Legislature." (emphasis added)).

42

and constitutional rights." Id. at 7. Moore contends that Thoennes "dismissed" these concerns and "stated that early appointment of counsel was 'rare.'" Id.

But, as with his claims against Judge Houwman and Magistrate Judges Robertson and Leddige, Moore's claims against Thoennes must be dismissed for lack of standing. Moore states that policies enforced by Thoennes "place[] [Moore] at ongoing risk of constitutional deprivation[,]" and that he has "suffered severe and ongoing mental-health deterioration even after the underlying charges were dismissed." CV-4192, Doc. 1 at 4, 7. But the charges surrounding the incident where Moore alleges his constitutional rights were violated have been dismissed, id. at 4; see also CV-4088, Doc. 1 at 6; CV-4193, Doc. 1 at 2, and Moore provides no facts that he faces a "real and immediate threat" of facing a similar injury in the future. Farella, 176 F.4th at 567. Here again, Moore does not explain how his requested relief would alleviate the harm associated with the alleged constitutional violations that occurred in February of 2025. See generally CV-4192, Doc. 1. Therefore, Moore's claims against Thoennes are dismissed for lack of standing.

### 7. Claims Against Jackley and Thompson

Moore sues Attorney General Marty Jackley and Deputy Attorney General Ernest Thompson in their official capacities for injunctive and declaratory relief in order to "remedy the South Dakota Attorney General's Office's abdication of its statutory duty to supervise county state's attorneys." CV-4191, Doc. 1 at 1, 2, 6. Moore alleges that Thompson and Jackley, "as final policymakers, have a duty to ensure office policies do not deprive individuals of constitutional rights[,]" and that their "refusal to supervise, despite knowledge of ongoing violations, constitutes deliberate indifference under § 1983." Id. at 5. According to Moore, "[t]his deliberate inaction directly violated [his] Sixth and Fourteenth Amendment rights,

43

including the right to counsel at initial appearances." Id. But, for the same reasons as discussed above, Moore lacks standing to bring these claims.

Moore provides no facts that he faces a real and immediate threat that he will face a similar injury in the future. See generally id. Moore states that the criminal charges that he alleges were brought in violation of his constitutional rights were dismissed, id. at 5, and he does not state that a violation of his Sixth or Fourteenth Amendment rights is likely to occur again in the future. While Moore seeks declaratory and injunctive relief in order to "prevent future constitutional violations[,]" id. at 2, this general and vague statement is not enough to establish an injury in fact. Farella, 176 F.4th at 567; see also Susan B. Anthony List, 573 U.S. at 158 (recognizing that an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical" (citation modified)). Moore also does not explain how his requested relief would alleviate the harm associated with the alleged constitutional violations that occurred in February of 2025. See generally CV-4191, Doc. 1. Therefore, Moore's claims against Jackley and Thompson are dismissed for lack of standing.

### 8.    Claims Against Minnehaha County Commission

Moore brings claims against the Minnehaha County Commission in its "official capacity only as governing body approving budgets and policies that result in constitutional violations[]" and seeks only injunctive and declaratory relief. CV-4192, Doc. 1 at 4, 5. Moore alleges that the County Commission "approve[s] budgets and policies that perpetuate systemic deficiencies and demonstrate deliberate indifference to constitutional rights." Id. at 8. But Moore lacks standing to bring these claims.

Moore's claims against the Minnehaha County Commission revolve around the February 2025 incident where he was "forced to proceed without counsel at a critical stage[]" and "denied

a statutorily required hearing[.]" Id. at 4.  Moore contends that policies approved by the

Minnehaha County Commission "place[] [him] at ongoing risk of constitutional deprivation[,]"

id. at 7, but here again, does not provide facts that he faces a real and immediate threat of facing

a similar injury in the future.  See generally id.  Moore also does not explain how his requested

relief would alleviate the harm associated with the alleged constitutional violations that occurred

in February of 2025.  Id.  Therefore, Moore's claims against the Minnehaha County Commission

are dismissed for lack of standing.

## IV.     Remaining Motions

In CV-4088, Moore requests "an extension on the appeal window[.]"  CV-4088, Doc. 6 at

2.  But a final judgment had not been entered at the time Moore filed this motion, nor did he

indicate in his motion that he was intending to file a notice of interlocutory appeal.  See generally

id.  Therefore, Moore's motion for an extension of the appeal window, CV-4088, Doc. 6, is

denied as moot.

Moore has also filed a motion to appoint counsel.  CV-4088, Doc. 6.  Because Moore's

claims are all dismissed, the motion to appoint counsel, CV-4088, Doc. 6, is denied as moot.

## V.      Future Filings

There are some small differences between Moore's initial complaint and his subsequent

complaints.  But by and large, all of his complaints surround the same nexus of facts and involve

the same defendants.  This Court notes that while a 28 U.S.C. § 1915(e) "dismissal does not bar

future litigation over the merits of a paid complaint making the same allegations as the dismissed

complaint, a [§ 1915(e)] dismissal has res judicata effect 'on frivolousness determinations for

future in forma pauperis petitions.'"  Waller v. Groose, 38 F.3d 1007, 1008 (8th Cir. 1994) (per

curiam).  If Moore files again what is "for all intents and purposes, the same complaint[,]" this

Court warns him that he may no longer be able to proceed in forma pauperis and may be required to pay the full civil complaint filing fee. Mitchell v. Sanchez, No. 14-0996-CV-ODS, 2015 WL 12835708 (W.D. Mo. May 12, 2015).

## VI.    Conclusion

Accordingly, it is ORDERED

1.    That Moore's motions for leave to proceed in forma pauperis, CV-4088, Doc. 2; CV-4191, Doc. 2; CV-4192, Doc. 2; CV-4193, Doc. 2; 25-4194, Doc. 2, are granted.

2.    That Moore's motions for judicial notice, CV-4192, Doc. 7; CV-4193, Doc. 8; CV-4194, Doc. 8, are granted for this limited purpose of taking judicial notice of the basic facts and existence of Moore v. Houwman, 25-4026-KES (D.S.D. Feb. 24, 2025), and Campbell v. Whitcher, 24-5039-KES (D.S.D. June 6, 2024).

3.    That Moore's claims against Judge Houwman in her official capacity for monetary damages and declaratory relief are dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

4.    That Moore's individual capacity claims against Lawton and Phillips are dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

5.    That all of Moore's claims against Minnehaha County are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

6.    That Moore's claims against Lawton, Haggar, Phillips, Koistinen, Smith, Milstead, and the unnamed employees of the Minnehaha County Jail in their

official capacities are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

7. That Moore's § 1983 conspiracy claim against Koistinen in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

8. That Moore's individual capacity claims against Milstead are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

9. That Moore's individual capacity claims against unknown staff working at the Minnehaha County Jail on February 19, 2025, are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

10. That Moore's claims against Larson, Branch, and Thum in their official capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

11. That Moore's Fourteenth Amendment claim against Larson in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

12. That Moore's Fourth Amendment claim against Branch in his individual capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

13. That Moore's claims against Thum in his individual capacity are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

47

14. That Moore's claims against Magistrate Judge Robertson in his individual capacity are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

15. That Moore's claims against Magistrate Judge Leddige in his individual capacity are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

16. That Moore's claims against Magistrate Judges Robertson and Leddige in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

17. That Moore's claims against Judge Houwman in her official capacity for injunctive relief and against Magistrate Judges Robertson and Leddige in their official capacities for injunctive and declaratory relief are dismissed for lack of standing.

18. That Moore's claims against Thoennes are dismissed for lack of standing.

19. That Moore's claims against Jackley and Thompson are dismissed for lack of standing.

20. That Moore's claims against the Minnehaha County Commission are dismissed for lack of standing.

21. That all other claims are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

22.     That the motion for an extension of the appeal window, CV-4088, Doc. 6, is

denied as moot.

23.     That the motion to appoint counsel, CV-4088, Doc. 6, is denied as moot.

DATED June 18th, 2026.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

49